1  David J. McGlothlin, Esq. (SBN 026059)
2  Ryan L. McBride, Esq. (SBN: 032001)
   ryan@kazlg.com
3  **KAZEROUNI LAW GROUP, APC**
4  2633 E. Indian School Road, Suite 460
   Phoenix, AZ 85016
5  Telephone: (800) 400-6808
6  Facsimile:  (800) 520-5523

7  *Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Stanley Robinson, | CASE NO. |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | **JURY TRIAL DEMANDED** |
| Ford Motor Company, | |
| Defendant. | |

1. Stanley Robinson ("Plaintiff") brings this Complaint, by and through his attorneys against Defendant Ford Motor Company, ("Ford" or "Defendant").

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1331 because Plaintiff's causes of action arise under federal law, i.e. Mangnuson-Moss Warranty Act—15 U.S.C. §2303 *et seq*.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims arising under Arizona statutes and Arizona common law pursuant to 28 U.S.C. §1367, because those claims are interrelated with Plaintiff's federal law claims and arise from a common nucleus of operative facts such that the adjudication of Plaintiff's state law claims with Plaintiff's federal law claims further the interest of judicial economy.

4. Venue is proper under 28 U.S.C. §1391 because the events giving rise to Plaintiff's cause of action occurred in the State of Arizona.

**PARTIES**

5. Plaintiff is an individual resident and citizen of Maricopa, Arizona.

6. Plaintiff purchased a 2017 Ford Focus.

7. Specifically, Plaintiff entered into a Motor Vehicle purchase contract with Earnhardt Ford for the purchase of a new 2017 Ford Focus, VIN ending in 8845 (hereinafter referred to as a "Focus" or "Vehicle") with the optional "PowerShift Transmission."

8. The purchase price was approximately $23,345.39.

9. Defendant Ford Motor Company is a publicly traded corporation organized under the laws of the state of Delaware.

10. Defendant Ford Motor Company has its principal place of business in the state of Michigan.

## FACTUAL ALLEGATIONS

11. This case arises out of defects and design of a motor vehicle purchased by Plaintiff.

12. According to the Detroit Free Press in an article dated July 11, 2019, its "investigation found that Ford knowingly launched two low-priced, fuel-efficient cars with defective transmissions and continued selling the troubled Focus and Fiesta despite thousands of complaints and an avalanche of repairs."[1]

13. In addition, the Free Press stated that Ford conducted an internal study in 2012 and "Ford in 2012 acknowledged rushing the cars to production, taking shortcuts to save money and apparently compromising quality protocols[.]"[2]

14. Between 2017 and 2019, Ford Motor Company ("Ford") manufactured, sold, and advertised two low-priced and fuel-efficient automobiles: The Ford Fiesta and Ford Focus.

15. Ford continues to manufacture, sell, and advertise for sale the Fiesta and Focus despite thousands of complaints and repairs signifying defects with these automobiles.

16. Plaintiff Stanley Robinson ("Plaintiff") purchased a defective 2017 Ford Focus that was manufactured, sold, and advertised for sale by Ford.

17. Plaintiff was not aware of any defects existing in his Ford Focus upon purchase.

18. The most pervasive defect occurred in the PowerShift automatic transmission ("PowerShift"). Ford designed, marketed, and represented the PowerShift as a more advanced and fuel-efficient alternative to a traditional

---

[1] https://www.freep.com/in-depth/money/cars/ford/2019/07/11/ford-focus-fiesta-transmission-defect/1671198001/ (last accessed June 28, 2021).
[2] *Id.*

manual or automatic transmission. As such, the PowerShift was marketed and sold as an option that added over $1,000 to each automobile's purchase price.

19. Ford touted that it had designed the Vehicles' computerized "automated manual" transmissions to meet heightened governmental and consumer expectations for fuel economy, performance, and efficiency. According to a <u>Ford</u> press release dated March 29, 2010, "PowerShift with dry-clutch facings and new energy-saving electromechanical actuation for clutches and gear shifts saves weight, improves efficiency, increases smoothness, adds durability and is sealed with low-friction gear lubricant for the life of the vehicle. This transmission requires no regular maintenance."[3] Unfortunately, this was not the case.

20. In the owner's manual for Plaintiff's car, Ford stated:

> **PowerShift Fuel Efficient Transmission**
> Your vehicle has been designed to improve fuel economy by reducing fuel usage while coasting or decelerating. When you take your foot off the accelerator pedal and the vehicle begins to slow down, the torque converter clutch locks up and aggressively shuts off fuel flow to the engine while decelerating. This fuel economy benefit may be perceived as a light to medium braking sensation when removing your foot from the accelerator pedal.

21. Despite Ford's representations, the PowerShift contains several design and/or manufacturing defects that cause, among other problems, transmission slips, buckling, kicking, jerking, harsh engagement, premature internal wear, sudden acceleration, delay in downshifts, delated acceleration, and difficulty in stopping the automobile (hereinafter "Transmission Defects").

---

[3] https://www.prnewswire.com/news-releases/powershift-transmission-production-begins-driving-ford-small-car-fuel-economy-leadership-89373007.html (last accessed June 28, 2021).

22. The PowerShift's defects also led to incredibly dangerous driving experiences for Plaintiff, including, but not limited to, their automobiles lurching forward and/or suddenly losing acceleration mid-drive.

23. Problems with the PowerShift also affected each automobile's components, including the Dual Clutch Transmission's clutch plates, resulting in premature transmission failure.

24. At the time of sale, Ford knew about and concealed from Plaintiff defects with the PowerShift, along with its attendant dangerous safety and drivability problems.[4] For Plaintiff, Ford continued to conceal these defects at the time of repair as well. Ford has refused to either acknowledge the existence of these defects or preformed ineffectual software upgrades that simply masked the defects but did not repair them.

25. Plaintiff was injured as a result of Ford's breach of warranty and misrepresentations. These injuries include, but are not limited to, pecuniary losses, loss in the use of the automobile Plaintiff purchased from Ford, premature loss of value in the automobile Plaintiff purchased form Ford, and loss of time by selling defective automobiles to Plaintiff.

26. Ford designed and marketed and represented its PowerShift Transmission as a more advanced and fuel-efficient alternative to a traditional manual or automatic transmission.

27. In addition, the Transmission Defect causes unsafe conditions, including, but not limited to, Vehicles suddenly lurching forward, delayed acceleration, and sudden loss of forward propulsion.

28. The Transmission Defect also causes premature wear to the Dual Clutch Transmission's clutch plates and other components, which results in

---

[4] https://www.freep.com/in-depth/money/cars/ford/2019/07/11/ford-focus-fiesta-transmission-defect/1671198001/ (last accessed June 28, 2021).

premature transmission failure and requires expensive repairs, including transmission replacement.

29. The PowerShift Transmission contained design and/or manufacturing defects that negatively affect the drivability of the Vehicle.

30. Plaintiff relied on representations contained in Ford's media advertising and printed material when he made the decision to purchase the vehicle at issue.

31. If Plaintiff had known about these defects at the time of sale Plaintiff would not have purchased the Vehicle or would have paid less for it.

32. Because of his reliance on Ford's omissions and/or misrepresentations, Plaintiff suffered a loss of money, property, and/or value of her Vehicle, including, but not limited to, out of pocket costs for the PowerShift Transmission. Additionally, as a result of the Transmission Defects, Plaintiff was harmed and suffered actual damages because the Vehicle's transmission is substantially certain to fail before its expected useful life has run.

33. The Vehicle was purchased for Plaintiff's personal use and enjoyment.

34. Plaintiff's purchase of the Vehicle was accompanied by express warranties offered by Ford and extending to Plaintiff.

35. These warranties were part of the basis of the bargain of Plaintiff contract for purchase of the Vehicle.

36. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the warranty guide and the 2017 Ford Focus owner's manual.

37. Plaintiff had problems with his transmission like those mentioned above and his car has never functioned as it should except for brief periods.

# COUNT ONE

## Violation of the Arizona Consumer Fraud Act – Ariz. Rev. Stat. 44-1521, et seq.

38. Plaintiff re-alleges and adopts all of the foregoing relevant paragraphs contained in this complaint.

39. Defendant knew of the Transmission Defect and the true nature of its PowerShift transmission system when it sold the Vehicles, but concealed all of that information from Plaintiff and other Arizona consumers.

40. By failing to disclose and by actively concealing the Transmission Defect and the true nature of its PowerShift transmission system, by marketing its vehicles as safe, reliable, easily operable, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, cleanliness, performance and efficiency, and stood behind its vehicles after they were sold, Defendant knowingly and intentionally misrepresented and omitted material facts and breached its duty not to do so.

41. Plaintiff reasonably relied on Defendant's material misrepresentations and omissions in its advertisements of the Class Vehicles and in the purchase of the Class Vehicles.

42. Defendant's use of deception, false promises, misrepresentations and material omissions in connection with the sale and advertisement of its services, violates the Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44- 1522(A).

43. Had Plaintiff known that his vehicle would exhibit the Transmission Defect, he would not have purchased this vehicle or would have paid less for it.

44. Plaintiff suffered injury in fact to a legally protected interest. As a result of Defendant's conduct, Plaintiff was harmed and suffered actual damages in the form of the diminished value of his vehicle.

45. As a result of Defendant's conduct, Plaintiff was harmed and suffered actual damages as a result of Defendant's misrepresentations and omissions with

1  regard to his vehicle transmissions because he purchased the vehicle, which did not
2  perform as advertised.

3      46.    As a direct and proximate result of Defendant's unfair or deceptive
4  acts or practices, Plaintiff suffered and will continue to suffer actual damages.

### COUNT TWO

### Violation of Warranty under the Magnuson-Moss Warranty Act – 15 U.S.C. § 2303 *et seq.*

8      47.    Plaintiff incorporates by reference the allegations contained in the
9  preceding paragraphs of this Complaint.

10     48.    The vehicle is a "consumer product" within the meaning of the
11 Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

12     49.    Plaintiff is a "consumer" within the meaning of the Magnuson-Moss
13 Warranty Act, 15 U.S.C. § 2301(3).

14     50.    Defendant is a "supplier" and "warrantor" within the meaning of the
15 Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

16     51.    Defendant's express warranty is a "written warranty" within the
17 meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). Ford
18 provided all purchasers and lessees of the Class Vehicles with a New Vehicle
19 "Bumper to Bumper" Limited Warranty and a Powertrain Limited Warranty with
20 the purchase or lease of the Class Vehicles.

21     52.    In this Bumper to Bumper Limited Warranty, Ford expressly
22 warranted that its dealers would "without charge, repair, replace, or adjust all parts
23 on your vehicle that malfunction or fail during normal use during the applicable
24 coverage period due to a manufacturing defect in factory-supplied materials or
25 factory workmanship" if the vehicle is properly operated and maintained and was
26 taken to a Ford dealership for a warranty repair during the warranty period.

27     53.    Under this "Bumper to Bumper Coverage," Ford promised to cover
28 "all parts on [the] vehicle" "for three years – unless you drive more than 36,000

miles before three years elapse. In that case, your coverage ends at 36,000 miles." Furthermore, under the Powertrain Limited Warranty, Ford expressly warranted that it would cover listed powertrain components under its Powertrain Limited Warranty, including transmission components (including the "Transmission: all internal parts, clutch cover, seals and gaskets, torque converter, transfer case (including all internal parts), transmission case, transmission mounts") "for five years or 60,000 miles, whichever occurs first."

54. On information and belief, Defendant breached the express warranty by:

    a. Extending a 3 year/36,000 mile Bumper to Bumper Limited Warranty and 5 year/60,000 mile Powertrain Limited Warranty with the purchase or lease of the vehicles, thereby warranting to repair or replace any part defective in material or workmanship, including the subject transmission, at no cost to the owner or lessee;

    b. Selling and leasing vehicles with transmissions that were defective in material and workmanship, requiring repair or replacement within the warranty period;

    c. Refusing to honor the express warranty by repairing or replacing, free of charge, the transmission or any of its component parts or programming and instead charging for repair and replacement parts; and

    d. Purporting to repair the transmission and its component parts by replacing the defective transmission components with the same defective components and/or instituting temporary fixes, on information and belief, to ensure that the Transmission Defect manifests outside of the vehicle's express warranty period.

55. Furthermore, Defendant's impliedly warranted that the vehicle was of merchantable quality and fit for such use.

56. This implied warranty included, among other things: (i) a warranty that the vehicle and its transmissions were manufactured, supplied, distributed, and/or sold by Ford were safe and reliable for providing transportation; and (ii) a

warranty that the vehicle and its transmissions would be fit for their intended use while the vehicles was being operated.

57. Contrary to the applicable implied warranties, the vehicle, and its transmission at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff with reliable, durable, and safe transportation.

58. Instead, the vehicle was defective, including, but not limited to, the defective design of its transmission.

59. Defendant's breach of express and implied warranties has deprived Plaintiff of the benefit of their bargain.

60. The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25,000. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

61. Defendant has been afforded a reasonable opportunity to cure its breach, including when Plaintiff brought their vehicle in for diagnoses and repair of the transmission on three different occasions.

62. As a direct and proximate cause of Defendant's breach of express and implied warranties, Plaintiff sustained damages and other losses in an amount to be determined at trial.

63. Defendant's conduct damaged Plaintiff, who is entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

64. Additionally, Ford breached the express warranty by performing illusory repairs. Rather than repairing the vehicles pursuant to the express warranty, Ford falsely informed Plaintiff that the problem with his vehicle was fixed, performed ineffective software updates, or replaced defective components in

the PowerShift Transmissions with equally defective components, without actually repairing the vehicle.

65. As a result of Defendant's violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiff has incurred damages.

## COUNT THREE

### Breach of Express Warranty

66. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

67. Defendant expressly warranted that the vehicle was of high quality and, at minimum, would actually work properly.

68. Defendant also expressly warranted that they would repair and/or replace defects in material and/or workmanship free of charge that occurred during the new vehicle and certified preowned ("CPO") warranty periods.

69. Plaintiff relied on Defendant's express warranties when purchasing his Vehicle.

70. Defendant breached this warranty by selling to Plaintiff the vehicle with known Transmission Defects, which are not of high quality, and which are predisposed to fail prematurely and/or fail to function properly.

71. As a result of Defendant's actions, Plaintiff has suffered economic damages including, but not limited to, costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

72. Defendant's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here.

73. Specifically, Defendant's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

74. The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiff.

75. Among other things, Plaintiff had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendant.

76. A gross disparity in bargaining power existed between Defendant and Plaintiff, and Defendant knew or should have known that the vehicle was defective at the time of sale.

77. Plaintiff complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

## COUNT FOUR

### Breach of the Implied Warranty of Merchantability

78. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

79. Defendant is a "merchant" as defined under the Uniform Commercial Code ("UCC").

80. The vehicle is "goods" as defined under the UCC.

81. Defendant impliedly warranted that the vehicle was of a merchantable quality.

82. Defendant breached the implied warranty of merchantability, as the vehicle was not of a merchantable quality due to the Transmission Defect.

83. As a direct and proximate result of the breach of said warranties, Plaintiff was injured, and are entitled to damages.

84. Defendant's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.

85. Specifically, Defendant's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

86. The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiff.

87. Among other things, Plaintiff had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendant.

88. A gross disparity in bargaining power existed between Defendant and Plaintiff, and Defendant knew or should have known that the vehicle was defective at the time of sale. Plaintiff complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

## COUNT FIVE

## Unjust Enrichment

89. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

90. As a direct and proximate result of Defendant's failure to disclose known defects and material misrepresentations regarding known defects, Defendant has profited through the sale and lease of said vehicle. Although the vehicle is purchased through Defendant's agents, the money from the vehicle sales flows directly back to Defendant.

91. Additionally, as a direct and proximate result of Defendant's failure to disclose known defects and material misrepresentations regarding known defects in the vehicle, Plaintiff's vehicle that requires high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Defendant.

92. Defendant has therefore been unjustly enriched due to the known defects in the vehicle through the use of funds that earned interest or otherwise

added to Defendant's profits when said money should have remained with Plaintiff.

93. As a result of the Defendant's unjust enrichment, Plaintiff suffered damages.

## RELIEF REQUESTED

94. Plaintiff requests the Court to enter judgment against Defendant, as follows:

   a. An order enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to the vehicle, and to remove and replace Plaintiff's transmissions with a suitable alternative product; enjoining Defendant from selling the vehicle with the misleading information; compelling Defendant to provide Plaintiff with a replacement transmission that does not contain the defects alleged herein; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged;

   b. A declaration requiring Defendant to comply with the various provisions of the state and federal consumer protection statutes herein alleged and to make all the required disclosures;

   c. An award to Plaintiff for compensatory, exemplary, and statutory damages, including interest, and including the additional purchase cost of the PowerShift Transmission option, in an amount to be proven at

trial;

d. Any and all remedies provided pursuant to the state and federal consumer protection statutes herein alleged;

e. A declaration that Defendant must disgorge, for the benefit of Plaintiff, all or part of the ill-gotten profits it received from the sale or lease of its vehicle, or make full restitution to Plaintiff;

f. An award of attorneys' fees and costs, as allowed by law;

g. An award of pre-judgment and post-judgment interest, as provided by law;

h. Leave to amend the Complaint to conform to the evidence produced at trial; and

i. Such other relief as may be appropriate under the circumstances.

## JURY DEMAND

95. Plaintiff demands a trial by jury of any and all issues in this action so triable.

**KAZEROUNI LAW GROUP, APC**

Date: July 23, 2021           By: *s/ Ryan L. McBride*
                                   Ryan L. McBride, Esq.
                                   *Attorneys for Plaintiff*